UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-8764-BER

UNITED STATES OF AMERICA

v.

SCOTT MACLAREN,

             **Defendant.**                    /

# CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?  ☐ Yes  ☑ No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  ☐ Yes  ☑ No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?  ☐ Yes  ☑ No

4. 4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024?  ☐ Yes  ☑ No

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

BY: *Juan A. Albino*
JUAN ALBINO
ASSISTANT UNITED STATES ATTORNEY
District Court No.  A5503412
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel:  (561) 820-8711
Fax:  (561) 820-8777
Email:  Juan.Albino@usdoj.gov

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>SCOTT MACLAREN,<br><br>*Defendant(s)* | Case No.  25-8764-BER |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   11/24/2025 - 12/10/2025   in the county of   Palm Beach   in the Southern District of   Florida  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1)<br>26 U.S.C. § 5861(d) and 5871 | Possession of a firearm by a convicted felon.<br>Knowing possession a "firearm" as the term is defined under the National Firearms Act ("NFA") that was not registered to him in the National Firearm Registration and Transfer Record, specifically, a destructive device. |

This criminal complaint is based on these facts:

See Attached Affidavit

**FILED BY** *TM* **D.C.**

**Dec 18, 2025**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

☑ Continued on the attached sheet.

*Complainant's signature*

Benjamin Garnett, ATF Special Agent
*Printed name and title*

Sworn to and attested to me by applicant by telephone (Facetime) per the requirements of Fed. R. Crim. P.4 (d) and 4.1.

Date:

Digitally signed by Bruce Reinhart
Date: 2025.12.18
17:11:19 -05'00'

*Judge's signature*

City and state:   West Palm Beach, FL         Bruce E. Reinhart, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION FOR A CRIMINAL COMPLAINT**

I, Benjamin Garnett, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to the West Palm Beach Field Office. I have been employed as a Special Agent with ATF since March 2020. As part of my duties as a Special Agent, I am responsible for conducting investigations of violations of federal laws, including but not limited to, those pertaining to firearms, narcotics, and firearms trafficking. I have conducted and participated in numerous investigations involving, but not limited to, the illegal possession and "straw purchasing" of firearms, carjacking, Hobbs Act Robbery, narcotics trafficking, and possession of a firearm in furtherance of narcotics trafficking. In October 2020, your affiant received over 53 hours of extensive explosives training at the ATF National Academy located in Glynco, GA. This training included explosives material identification (to include commercial, military and improvised explosives), Federal explosives laws and regulations, explosives hands-on use, destructive device (i.e., "bomb") componentry, explosives related investigation, post-blast investigation and the drafting and execution of explosives related search warrants.

2. Your affiant makes this Affidavit in order to establish probable cause to believe that, in the Southern District of Florida, Scott MACLAREN ("MACLAREN") did knowingly possess a "firearm"[1] as the term is defined under the National Firearms Act ("NFA") that was not registered

---

[1] 26 USC § 5845(a) defines the term "firearm" as (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title 18 , United States Code); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its

to him in the National Firearm Registration and Transfer Record, in violation of Title 26, United States Code, Sections 5861(d) and 5871, specifically, a destructive device. Further, your affiant makes this Affidavit in order to establish probable cause to believe that, in the Southern District of Florida, MACLAREN did knowingly possess a "firearm"[2] as a convicted felon in violation of Title 18, United States Code § 922 (g)(1).

3. The statements contained in this Affidavit are based on my personal knowledge, as well as information provided by other individuals, including other law enforcement officials and my review of records and other evidence obtained during the course of this investigation. I have included only those facts that I believe are necessary to establish probable cause in support of an arrest warrant.

## PROBABLE CAUSE

### Intel Received Regarding MACLAREN

4. On or about November 24, 2025, law enforcement received information from a documented ATF Confidential Informant that has been deemed credible ("CI"), that MACLAREN was potentially in possession of and/or capable of producing explosive materials and was attempting to sell them in Palm Beach County, FL. The CI reported that MACLAREN stated the devices would be incendiary in nature and capable of reducing a building to its foundation. The CI further reported that, during this conversation, the CI advised MACLAREN that the CI knew someone interested in purchasing an incendiary device. MACLAREN described the device as one

---

manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

[2] 18 USC § 921(a)(3) defines the term "firearm" as (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

that would contain multiple gallons of gasoline and stated that this was not the first time he has made a device like that, claiming that he had previously taken multiple buildings down to just the foundation.

5. The CI also reported that on November 24, 2025, while discussing the devices MACLAREN was capable of making, the CI observed ammunition and firearm magazines inside MACLAREN's residence located at 186 Plantation Blvd, Lake Worth, FL 33467. Additionally, MACLAREN stated to the CI there were traps inside the residence that contained firearms.

6. A review of MACLAREN's information revealed he has multiple felony convictions, has not had his rights restored to possess firearms or explosive material, and is a documented member of the Aryan Brotherhood gang.

**First Undercover Meet with MACLAREN – December 3, 2025**

7. On or about December 3, 2025, at the direction of law enforcement, a documented ATF Confidential Informant that has been deemed credible ("CI"), exchanged communications with MACLAREN to arrange a meeting to take place between MACLAREN, the CI, and an ATF Undercover Agent ("UCA"). MACLAREN agreed to meet the CI and UCA on December 3, 2025, at the Chili's located at 5910 S Jog Rd, Lake Worth, Florida 33467, in the Southern District of Florida to conduct the meeting. All phone conversations were audio recorded, and all text communications were preserved.

8. On or about December 3, 2025, in the late afternoon hours, an ATF UCA and CI, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of Chili's located at 5910 S Jog Rd, Lake Worth, Florida 33467. Upon arrival, the UC parked the undercover vehicle ("UCV") in the parking lot of Chili's. The UCA observed MACLAREN in the passenger seat of a silver Nissan SUV parked directly behind the UCV. The UCA and CI exited the UCV

3

and walked to the tailgate of the UCV where they met MACLAREN and the CI introduced the UCA to MACLAREN as the individual interested in purchasing incendiary devices.

9. After being introduced, MACLAREN began describing the incendiary device that he would provide to the UCA. MACLAREN stated the device would consist of a gas can with a road flare duct taped to it. MACLAREN further advised the UCA to "throw a couple in the window and a couple on the roof" insinuating where the devices should be deployed. The UCA clarified that MACLAREN understood the UCA was trying to "send a message," and MACLAREN confirmed his devices would definitely send a message, stating they were the best way to burn down the building. MACLAREN stated he would purchase gasoline and flares and added that he would leave his cellphone at his residence. Based on training and experience, this is a common tactic used by career criminals to avoid identification through cellular location data of devices located at crime scenes. MACLAREN further stated that he would accompany the UCA and that he possessed black camouflage clothing, gloves, and a mask to avoid detection. MACLAREN stated that gasoline is the most combustible material available and said, "if you want me to burn him down, I can burn him down, if you want me to put a pistol in his mouth, I can put a pistol in his mouth - however you want to do it." The UCA asked MACLAREN if he had a pistol to which MACLAREN said yes. MACLAREN also stated that it would be easier if the UCA carried out the act without MACLAREN present. MACLAREN again explained the construction of the device, "You take a couple 3-gallon gas cans, you fill them with gas, duct tape the road flare to it, then light the road flare." When the UCA stated he did not have the materials, MACLAREN responded that he would be able to obtain the materials for the UCA and that he could get it all set up for the UCA. MACLAREN further confirmed to the UCA that he had done this before. The UCA reiterated that the act needed to appear as a message from the UCA. MACLAREN stated

that if the UCA wants it to be a message from the UCA, MACLAREN would provide the devices to the UCA for the UCA to do it. MACLAREN advised the UCA he would get the stuff from AutoZone and stated that if the UCA wanted to blow up the building the UCA would need 3 or 4 devices. Shortly after, the meeting concluded.

### Second Undercover Meet with MACLAREN – December 10, 2025

10. On or about December 10, 2025, an ATF Undercover Agent (UCA) exchanged communications with MACLAREN to arrange the purchase of five (5) incendiary/destructive devices to take place on December 10, 2025. MACLAREN agreed to meet the UCA at MACLAREN's residence to conduct the transaction and provided the address as 186 Plantation Blvd, Lake Worth, FL 33467, in the Southern District of Florida. All phone conversations were audio recorded, and all text communications were preserved.

11. On or about December 10, 2025, in the late afternoon hours, an ATF UCA, equipped with audio/video recording equipment and ATF Investigative Funds, arrived at MACLAREN's residence located at 186 Plantation Blvd, Lake Worth, FL 33467. Upon arrival, the UCA observed MACLAREN in the driveway of the residence. The UCA provided MACLAREN with a deposit of $100 of ATF Investigative Funds. The deposit was requested by MACLAREN during the recorded communications prior to arriving to secure the purchase of the devices. After providing MACLAREN with the funds, the UCA asked MACLAREN what the plan was. MACLAREN stated that he would have to go over to a store to purchase the remainder of the bomb components and after purchasing the final components, MACLAREN would return to his residence to assemble the devices. The UCA asked MACLAREN whether the devices would be completed upon the UCA's return, and MACLAREN confirmed they would be ready to go. The UCA then departed the area.

12. Shortly after the UCA departed the area, MACLAREN was observed by law enforcement leaving his residence and eventually walking to an AutoZone located at 6272 Lantana Rd, Lake Worth Beach, FL 33463. This was consistent with what MACLAREN previously told the UCA about purchasing components of the devices at AutoZone. MACLAREN was then observed exiting the AutoZone with a plastic bag.

13. After departing the AutoZone, MACLAREN was observed by law enforcement walking to the Walmart located at 6177 Jog Road, Greenacres, FL 33467.  Shortly after entering the Walmart, MACLAREN was observed exiting the Walmart with the plastic bag from AutoZone as well as pushing a shopping cart that contained four (4) clear jugs.

14. After departing Walmart, MACLAREN was observed by law enforcement walking to the Shell Gas Station located at 6760 Lantana Road, Greenacres, FL 33467 and leaving the shopping cart with the 4 jugs at gas pump 12. MACLAREN entered the Shell Gas Station for a brief period of time, then returned to gas pump 12. MACLAREN was then observed pumping gasoline from the gas pump into the 4 plastic jugs. MACLAREN departed the Shell pushing the shopping cart with the 4 jugs filled with gasoline while carrying the plastic bag from AutoZone.

15. After leaving the Shell Gas Station, MACLAREN was observed returning to his residence at 186 Plantation Blvd, Lake Worth, FL 33467. Upon arrival, law enforcement observed MACLAREN move the shopping cart containing gasoline filed jugs underneath the carport and observed MACLAREN handling the jugs.

16. Shortly after MACLAREN returned to his residence, the UCA received a text message from MACLAREN indicating that the UCA could come to retrieve the devices.

17. The UCA then departed the staging location and returned to MACLAREN's residence. Upon arrival, the UCA backed the undercover vehicle ("UCV") into the driveway, exited the UCV,

and approached MACLAREN, engaging him in conversation. The UCA observed MACLAREN loading the devices into a shopping cart to transport them to the UCV. The UCA observed what appeared to be flares attached to the jugs. When the UCA asked MACLAREN if the flares needed to be taped to the jugs, MACLAREN stated they would not fall out because he placed them in the handles and secured them tightly to the jugs. MACLAREN further stated that he would provide the UCA with a practice flare so the UCA would know how to use it. MACLAREN referred to the liquid inside one of the devices as his "secret sauce". The UCA observed a total of five (5) devices, 4 clear jugs and 1 blue jug, each with flares secured to the jugs. MACLAREN then pushed the shopping cart containing the five (5) devices to the back of the UCV and loaded all 5 devices into the UCV. Three (3) of the devices were placed inside a bin provided by MACLAREN to prevent movement, and the remaining two (2) were placed in the trunk. A tarp was then used to cover the devices inside the UCV. The UCA then provided MACLAREN with an additional $300 in Investigative Funds. MACLAREN described the blue jug as a laundry detergent, as opposed to a water jug like the remainder of the devices and stated that that device is good because the UCA could easily throw the device through a window of the business that the UCA intended to burn down. MACLAREN further explained to that he set the devices up in such a way that the length of the flare would dictate how long it would burn before igniting the rest of the devices. Shortly after the transaction concluded, the UCA departed the location.

18. After departing the area, the UCA drove to a predetermined location where ATF Certified Explosives Specialist Bomb Technician (CESBT) Javier Ribas, with the assistance of the Palm Beach Sheriff's Office Bomb Squad Detectives, observed the devices, conducted field tests on the devices, and rendered the devices safe.

19. CESBT Ribas contacted Matthew Anderson, Destructive Device Examiner, at ATF National Center for Explosives Training and Research (NCETR). CESBT Ribas provided Examiner Anderson with the information from the undercover purchase, as well as pictures of the devices. Based on this, Examiner Anderson provided the following statement, "After reviewing the photographs and information from Special Agent Ribas, the items are consistent with five improvised incendiary bombs. Incendiary bombs are destructive devices as that term is defined in 26 U.S.C., §5845(f) and would be regulated in accordance with the Federal firearms laws."

20. Samples of the liquids from inside all five (5) devices, the five (5) attached flares, the practice flare, and the containers were transported to the ATF Forensic Laboratory in Atlanta, GA for additional analysis.

21. A records check of the National Firearms Registration and Transfer Record database revealed that MACLAREN has not registered a destructive device.

22. A records check of the National Crime Information Center indicates that MACLAREN was previously convicted of a felony in federal court. Federal Criminal case number 14-cr-60119-DTKH indicates MACLAREN was adjudicated guilty to one (1) count of Possession of a Firearm by a Convicted Felon in violation of Title 18, United States Code § 922(g)(1) on or about October 14, 2014, in the Southern District of Florida.

23. A query with the Florida Office of Executive Clemency did not indicate that MACLAREN had the right to possess a firearm restored.

## CONCLUSION

24. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that Scott MACLAREN ("MACLAREN") did knowingly did knowingly possess a "firearm" as the term is defined under the National Firearms Act ("NFA") that was not registered to him in the

National Firearm Registration and Transfer Record, in violation of Title 26, United States Code, § 5861(d) and 5871, specifically, a destructive device. Further, your affiant makes this Affidavit in order to establish probable cause to believe that, in the Southern District of Florida, MACLAREN did knowingly possess a "firearm" as a convicted felon in violation of 18 United States Code, Section 922 (g)(1), specifically, a destructive device.

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Respectfully submitted,

_____
Benjamin Garnett, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by FaceTime, on this _____ day of December 2025, at West Palm Beach, Florida

Digitally signed by Bruce Reinhart
Date: 2025.12.18 17:11:45 -05'00'

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

9